**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Criminal Action No. 1:10-cr-00114** |
| **v.** | : | |
| | : | **(Chief Judge Kane)** |
| **BRYAN MITCHELL,** | : | |
| **Defendant** | : | |

## MEMORANDUM

Before the Court is Defendant Bryan Mitchell's motion to suppress evidence. (Doc. No. 18.) Defendant moves to suppress evidence of firearms found pursuant to a warrantless search of a residence in which he was present on October 13, 2009. For the reasons that follow, the motion will be denied.

## I. BACKGROUND

### 1. Factual Background[1]

At all times relevant to this order, Defendant Bryan Mitchell was under supervision by the Dauphin County Adult Probation Office ("DCAPO") for having possessed a firearm without a license. Prior to commencing probation, Mitchell had been given a form entitled "Dauphin County Conditions of Probation/Parole/Intermediate Punishment." The form notified him that, as part of his probation, he was "subject to a search of [his] person, property, place of residence, and seizure of all contraband found therein." (Ex. 1.)

On October 13, 2009, DCAPO received information from a confidential source ("CS") that Defendant was distributing firearms from 1411 South Fifteenth Street, Apartment 202, in

[1]Unless otherwise noted, the following factual account represents the facts the Court credits upon consideration of all testimony and evidence presented during the evidentiary hearing held August 25, 2010.

Harrisburg.[2] The CS more particularly stated that the firearms were being held in a "dark" duffel bag which contained "machine gun-type" and "MAC 11" rifles. The CS had delivered accurate tips to the probation office on approximately three prior occasions.

Upon receiving the tip from the CS, Probation Officer Tim Kinsinger began investigating by calling his deputy director and requesting assistance from Assistant Supervisor Kelly Evans. Evans agreed to assist in the investigation of Mitchell. Evans attempted to contact Mitchell's primary case agent, Tina Trostle, but Trostle was unavailable. Evans did, however, retrieve and read Trostle's notes on Mitchell prior to acting on the tip. Trostle had indicated in her notes that Mitchell's sister, Chelsea, had told her that Mitchell was residing at 1411 Fifteenth Street with his girlfriend, Shahayla Aldridge. There was no indication whether Trostle had investigated the accuracy of the representation that Mitchell resided at 1411 Fifteenth Street.

Later the same day, Evans and Kinsinger decided to investigate the CS's tip by going to 1411 Fifteenth Street. Because they were concerned that firearms would be present, Evans and Kinsinger arranged for Harrisburg police officers to accompany them to the residence. Accordingly, on October 13, 2009, Kinsinger, Evans, and several unidentified police officers knocked on the door at 1411 Fifteenth Street, Apartment 202. They announced themselves as "probation." Defendant Mitchell opened the door, and the officers immediately entered the apartment with their guns and flashlights drawn. Mitchell was instantly detained. Within seconds

---

[2]Though the issue does not appear to be material, the Court notes that there was conflicting testimony as to whether the apartment in question is located at 1411 Fifteenth Street or 1411 Fourteenth Street. Because Shahayla Aldridge, lessee of the apartment, stated her address to be 1411 Fifteenth Street, Apartment 202, the Court will use the Fifteenth Street address.

of the entry, a 9 mm Smith and Wesson handgun was seen near Mitchell's person.[3] The officers then performed a protective sweep of the apartment, looking only for other persons present, and found Shahayla Aldridge, Mitchell's girlfriend, and their toddler son, Bernai.

Once the officers discovered that the apartment was rented exclusively in Aldridge's name, the officers asked for her permission to search the residence. Prior to receiving her consent, the officers informed her that she could be charged with possession of any contraband found in the apartment, and that, as a result, she might lose her residence. She signed a consent form. (Ex. 2.) Before any search pursuant to the consent took place, however, Mitchell provided the officers with the location and contents of the duffle bag.[4]

Mitchell testified that they had only been at Aldridge's home for approximately forty-five minutes when the probation and police officers arrived. Mitchell further clarified that, for approximately one month prior to the events of October 13, 2009, he and Aldridge had been living exclusively at his mother's residence: 623 Second Street, Highspire. Not only had the two been living at the Second Street residence, he claimed, but power had been disconnected from the 1411 Fifteenth Street residence for approximately a week. Mitchell and Aldridge both testified that they traveled to her apartment on October 13, 2009, only to empty the refrigerator in light of the power disruption and to clean the residence. In fact, Mitchell unequivocally stated

---

[3]There is a discrepancy of testimony as to whether the gun was initially located on the floor within Defendant's reach or on a night stand or shelf within reach of the entryway.

[4]Defendant Mitchell testified that he made this statement without being first informed of his Miranda warnings. Evans testified, in contrast, that Mitchell was informed of his right to remain silent prior to making any statements. In any event, Defendant does not seek suppression of this statement; indeed, at the hearing, he testified as to his knowledge that the duffel bag contained firearms.

that he had not been in the residence for approximately a month prior to the incident, that he had no intention of remaining in the apartment, that his ride was actually late in picking them up from the apartment, that he had no personal belongings at Aldridge's apartment, and that he had never resided in the apartment. Aldridge confirmed Mitchell's statements by revealing her understanding that Mitchell was prohibited from living in her apartment complex.

Defendant's mother, Michelle Mitchell, also testified regarding Defendant's residence. She corroborated Mitchell and Aldridge's testimony that Mitchell had been living with her in Highspire. She confirmed that Aldridge had also been living at the Highspire residence for the entire month preceding the events at issue in this case. She explained that the family had been living together and supporting one another through the recent loss of her other son, Defendant's brother.

**2. Procedural History**

On April 16, 2008, Mitchell was sentenced to Dauphin County Court for carrying a firearm without a license. He was paroled on March 27, 2009, at which point he came under the supervision of the DCAPO. On April 7, 2010, Mitchell was indicted for violation of 18 U.S.C. § 922(g)(1), knowingly possessing a firearm as a previously-convicted felon. (Doc. No. 1.) Defendant entered a plea of not guilty. (Doc. No. 9.) On May 18, 2010, Mitchell filed a motion to suppress evidence found as a result of the events outlined above. (Doc. No. 18.) On August 25, 2010, the Court heard testimony and argument on the motion. (Doc. No. 31.) The motion is now ripe before the Court for disposition.

## II. DISCUSSION

Defendant argues that the firearms retrieved at 1411 Fifteenth Street must be suppressed because they are the fruit of an illegal entry into the residence. Though he acknowledges his diminished expectation of privacy as a probationer, he nonetheless argues that the probation officers lacked even a reasonable suspicion to believe he possessed contraband within the residence. He further argues that the consent obtained from Aldridge, the owner of the apartment, does not cure any deficiency in the search because the consent was coerced. Because the Court finds that Defendant had no expectation of privacy in the residence searched–a residence at which he admittedly neither lived nor intended to remain for more than twenty minutes–the Court will deny the motion to suppress without considering the justification for the search.[5]

The Fourth Amendment to the United States Constitution provides that:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. "One's home is sacrosanct, and unreasonable government intrusion into the home is 'the chief evil against which the wording of the Fourth Amendment is directed'." United States v. Zimmerman, 277 F.3d 426, 431 (3d Cir. 2002) (quoting Payton v. New York,

[5]At times, courts have referred to the legitimate expectation of privacy in a place as "standing" to challenge a Fourth Amendment search of that place. Even when using this shorthand, the proper analysis is into whether the party seeking suppression had a legitimate expectation of privacy in the place searched. See United States v. Stearn, 597 F.3d 540, 544 n.2 (3d Cir. 2010).

445 U.S. 573, 585 (1980)). Though the text of the Fourth Amendment "suggests that its protections extend only to people in 'their' houses . . . in some circumstances a person may have a legitimate expectation of privacy in the house of someone else." Minnesota v. Carter, 525 U.S. 83, 89 (1998). For example, "an overnight guest in a home may claim the protection of the Fourth Amendment, but one who is merely present with the consent of the householder may not." Id. at 90; see also Minnesota v. Olson, 495 U.S. 91, 98 (1990) ("To hold that an overnight guest has a legitimate expectation of privacy in his host's home merely recognizes the everyday expectation of privacy that we all share. . . . [S]ociety recognizes that a houseguest has a legitimate expectation of privacy in his host's home.").

In other words, the right to be free from an unreasonable search is a personal one, which cannot be vicariously asserted. Rakas v. Illinois, 439 U.S. 128, 133-34 (1978). Fourth Amendment protection is dependent "upon whether the person who claims the protection . . . has a legitimate expectation of privacy in the invaded place." Carter, 525 U.S. at 88 (citing Rakas, 439 U.S. at 143)). A defendant asserting a Fourth Amendment protection has the burden of proving that 1) he had a subjective expectation of privacy in the searched premises and 2) that society is prepared to recognize that expectation as legitimate. Minnesota v. Olson, 495 U.S. 91 (1990) (defining legitimate expectation of privacy); United States v. Stearn, 597 F.3d 540, 551 (3d Cir. 2010) ("Because Fourth Amendment rights are 'personal,' the proponent of a motion to suppress 'bears the burden of proving . . . that he had a legitimate expectation of privacy in' the place searched." (citing Rawlings v. Kentucky, 448 U.S. 98, 104 (1980))).

In this case, Mitchell expressly denied that he was an overnight guest. Further, he presented no evidence to support the conclusion that he had either a subjective expectation of

privacy in Aldridge's home or an expectation that society is prepared to recognize. Indeed, all evidence presented at the hearing weighs in favor of the conclusion that his presence in the home on October 13, 2009 was more akin to "one who is merely present with the consent of the householder" than an overnight guest.

At the hearing, Mitchell explained that he did not own the home, did not reside there overnight, did not have a key to the apartment, did not receive mail there, did not have an intent to remain in the apartment for more than twenty minutes and had not been in the apartment for more than forty-five minutes, and had not been to the apartment in weeks. Indeed, the evidence presented revealed that Mitchell could not have lawfully resided at the apartment. The uninhabitability of the apartment due to its loss of electricity and Mitchell's testimony that he brought the duffel bag into the apartment only because his friend requested him to do so further weighs against a finding that Mitchell had any expectation of privacy in the apartment. See United States v. Rheault, 561 F.3d 55, 59 (1st Cir. 2009) (finding that a subjective expectation of privacy in a location is present where a defendant has the purpose of hiding evidence in that spot). Simply put, his testimony evidenced no interest or expectation that any of his belongings–including the duffel bag–be shielded by their presence within Aldridge's residence. Though Mitchell was in the residence for personal rather than for business purposes, the extremely brief period for which he was invited into the home and his explanation that he was in the home merely to clean the residence and to depart, compel the conclusion that any expectation of privacy he did have in Aldridge's residence was not reasonable. See United States v. Mosley, 454 F.3d 249, 259 (3d Cir. 2006) ("Short-term guests, however, have no expectation of privacy in the house and therefore cannot suppress the fruits of the illegal search."); United

States v. Torres, 162 F.3d 6, 10 (1st Cir. 1998) ("Torres was nothing more than a casual visitor in the apartment, and, as such, had no reasonable expectation of privacy."); Terry v. Martin, 120 F.3d 661, 663-64 (7th Cir. 1997) (distinguishing short-term social guest from the overnight social guest's assumptively reasonable expectation of privacy set out in Minnesota v. Olsen, 495 U.S. 91 (1990)).

Accordingly, upon consideration of the totality of the circumstances, the Court finds that Defendant has not met his burden of demonstrating that he had a reasonable expectation of privacy in Aldridge's apartment. Without such an expectation, he does not have "standing" under the Fourth Amendment to challenge the entry into Aldridge's apartment. It follows, then, that he cannot seek refuge under the exclusionary rule to suppress evidence discovered during the search of Aldridge's residence. For these reasons, Defendant's motion to suppress must be denied.

An order consistent with this memorandum follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Criminal Action No. 1:10-cr-00114** |
| **v.** | : | |
| | : | **(Chief Judge Kane)** |
| **BRYAN MITCHELL,** | : | |
| **Defendant** | : | |

**ORDER**

**AND NOW**, this 4th day of October 2010, upon consideration of Defendant's motion to suppress evidence (Doc. No. 18), **IT IS HEREBY ORDERED** that the motion is **DENIED.**

S/ Yvette Kane
Yvette Kane, Chief Judge
United States District Court
Middle District of Pennsylvania